UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD LOMBARD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PORTOLA PHARMACEUTICALS, INC., SCOTT GARLAND, JEFFREY W. BIRD, LAURA A. BREGE, DENNIS M. FENTON, JOHN H. JOHNSON, TED W. LOVE, HOLLINGS C. RENTON, DAVID C. STUMP, H. WARD WOLFF, ODYSSEY MERGER SUB INC., and ALEXION PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Richard Lombard ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.  Plaintiff brings this class action on behalf of the public stockholders of Portola Pharmaceuticals, Inc. ("Portola" or the "Company") against Portola's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, arising out of the Board's attempt to sell the Company to Alexion Pharmaceuticals, Inc. through its wholly-owned subsidiary, Odyssey Merger Sub Inc. (collectively "Alexion").

1

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on May 27, 2020. The 14D-9 recommends that Portola stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby Portola is acquired by Alexion. The Proposed Transaction was first disclosed on May 5, 2020, when Portola and Alexion announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Alexion will commence a tender offer to acquire all of the outstanding shares of common stock of Portola for $18.00 per share (the "Merger Consideration"). The deal is expected to close in the third quarter of 2020.

3. The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Portola management, and the financial analyses conducted by Centerview Partners LLC ("Centerview"), Portola's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Portola's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Portola.

6. Defendant Portola is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 270 E. Grand Avenue, South San Francisco, California 94080. Portola's common stock trades on Nasdaq under the ticker symbol "PTLA."

7. Defendant Scott Garland ("Garland") has been President, Chief Executive Officer and a director of the Company since 2018.

8. Defendant Jeffrey W. Bird ("Bird") has been a director of the Company since 2003.

9. Defendant Laura A. Brege ("Brege") has been a director of the Company since 2015.

10. Defendant Dennis M. Fenton ("Fenton") has been a director of the Company since 2015.

11. Defendant John H. Johnson ("Johnson") has been a director of the Company since 2014.

12. Defendant Ted W. Love ("Love") has been a director of the Company since September 2019.

13. Defendant Hollings C. Renton ("Renton") has been a director of the Company and Chairman of the Board since 2010.

14. Defendant David C. Stump ("Stump") has been a director of the Company since 2015.

15. Defendant H. Ward Wolff ("Wolff") has been a director of the Company since 2007.

16. Defendants Garland, Bird, Brege, Fenton, Johnson, Love, Renton, Stump, and Wolff are collectively referred to herein as the "Board."

17. Defendant Alexion Pharmaceuticals, Inc. is a Delaware corporation with its principal executive offices located at 121 Seaport Boulevard, Boston, Massachusetts 02210. Alexion Pharmaceuticals, Inc. common stock trades on Nasdaq under the ticker symbol "ALXN."

18. Defendant Odyssey Merger Sub Inc. is a Delaware corporation and is a wholly-owned subsidiary of Alexion Pharmaceuticals, Inc.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and 20(a) of the Exchange Act.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Portola is incorporated in this District.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Portola common stock and their successors in interest and/or their transferees, except defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

23. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of May 1, 2020, Portola had approximately 78.4 million shares outstanding.

(b) Questions of law and fact are common to the Class, including, inter alia, the following:

    (i) Whether defendants have violated Section 14(e) of the Exchange Act;

    (ii) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

    (iii) Whether Plaintiff and other members of the Class would suffer irreparable injury were defendants to file an amendment to the 14D-9 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

    (iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

    (v) Whether the Class is entitled to injunctive relief or damages as a result of Individual defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

24.     Portola is a biopharmaceutical company incorporated in 2003 that develops treatments for thrombosis and inflammation. The Company has one drug, Andexxa, approved to treat bleeding in patients taking specific anticoagulants.

25.     On May 5, 2020, Portola and Alexion entered into the Merger Agreement.

26.     According to the press release announcing the Proposed Transaction on May 5, 2020:

**Alexion to Acquire Portola**

*– Expands and diversifies Alexion's hematology, neurology and critical care commercial portfolio with transformative Factor Xa inhibitor reversal agent –*

*– Conference call and webcast scheduled for today, May 5, at 8:00 a.m. ET –*

**BOSTON & SOUTH SAN FRANCISCO, Calif – MAY 5, 2020** - Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant),

inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt

of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

**B. The Materially Incomplete and Misleading 14D-9**

27. The Individual Defendants must disclose all material information regarding the Proposed Transaction to Portola stockholders so that they can make a fully informed decision whether to tender their shares in favor of the Proposed Transaction.

28. On May 27, 2020, defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Portola stockholders cannot make a fully informed decision concerning whether or not to tender their shares in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

29. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of Centerview's fairness opinion, Centerview reviewed "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that Portola's management provided to the Board and Centerview.

30. Notably, defendants failed to disclose the six-month unlevered free cash flow figures for the second half of 2020, as well as the probability adjustment, if any, of receiving the

8

upfront payments. The 14D-9 also fails to disclose stock-based compensation expense, the NOL balance and projected utilization, and the fully diluted shares outstanding used in Centerview's analyses. Furthermore, the 14D-9 fails to disclose how much, if any, of the projected financial results are due to cerdulatinib. The forecasts provided in the 14D-9 are much lower because of COVID-19 and the decision to out-license rights to Andexxa outside the U.S. Defendants must disclose how COVID-19 truly impacts the Company in the long-term. Finally, the 14D-9 disclose two sets of forecasts: one set from January 2020 and another updated set from April 27, 2020. However, at a Board meeting on March 27, 2020, management provided the Board with changes and adjustments to the January 2020 forecasts. The implied per share equity value calculated by management based on the changed and adjusted projections was significantly higher than the implied per share equity value calculated based on the April 27, 2020 forecasts. The 14D-9 must disclose the projections and analyses discussed with and provided to the Board on March 27, 2020. This omitted information is necessary for Portola stockholders to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Centerview's Financial Analyses*

31. Defendants failed to disclose key information in the 14D-9 with respect to Centerview's financial analyses. For example, with respect to the *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose the values of each of the selected transactions.

32. Centerview performed analyses after the Proposed Transaction was announced. As described in the 14D-9, the analyses are confusing and appear to be inconsistent. Methodology 3 apparently entails an addition of "net cash of $122 million" for its public company analysis and its precedent transactions analysis. The "updated" DCF, however, used cash flow figures that were lower than those used in the fairness analysis for every year through 2027. The 14D-9 fails to

disclose the differences, if any, in the tax treatment of Methodology 1 and Methodology 2 compared to Methodology 3, since both Methodology 1 and Methodology 2 treated the liabilities as debt instead of an expense. In addition, the 14D-9 fails to disclose the difference and the quantified underlying calculations between the $166 million figure used in Methodology 1 as compared to the $66 million figure used in Methodology 2.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

33. The 14D-9 also fails to disclose material information concerning the sales process. For example, the 14D-9 states that the Board met on December 15, 2019 to discuss Alexion's letter expressing interest in acquiring the Company. Yet the 14D-9 does not disclose what was discussed.

34. On March 6, 2020, Centerview discussed with the Board its financial perspectives on Alexion's proposal of February 27, 2020. At that same meeting, Centerview discussed with the Board its preliminary financial analyses of Alexion's proposal. The 14D-9 fails to disclose these analyses. Similarly, the 14D-9 fails to disclose the financial analyses reviewed by Centerview and the Board on April 29, 2020.

35. In exchange for its services, the Company agreed to pay Centerview $25.8 million, of which $24.1 million is contingent on the Proposed Transaction closing. The 14D-9 notes that on March 6, 2020, the Board discussed the "economic terms" of Centerview's engagement. The 14D-9 must disclose whether Centerview was aware before rendering its fairness opinion that 93% of its compensation would not be provided unless the Proposed Transaction closed. If so, the 14D-9 must disclose when the Board or management discussed Centerview's compensation with Centerview.

36. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were

not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, Portola stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

37. In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

38. Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

39. Further, the 14D-9 indicates that on May 4, 2020, Centerview reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Portola stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Centerview's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

40. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting Portola stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

43.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Portola, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

44.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

45.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Portola shares and the financial analyses performed by Centerview in support of its fairness opinion; and (iii) the sales process.

46. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that Centerview reviewed and discussed its financial analyses with the Board during various meetings including on May 4, 2020, and further states that the Board relied upon Centerview's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

47. The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Portola and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

52. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until defendants agree to include the material information identified above in any such amendment;

C. Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the 14D-9;

D. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E. Directing the defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 8, 2020                    **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*